Good morning. Good morning, Your Honor. My name is Robin Aquino. I work with the U.S. Excuse me. I represent the petitioner in this case. I'd like to reserve one minute of my time. Mr. Chen, in this case, is a Christian proselytizer. The way that the immigration judge and the Board of Immigration Appeals and the Department of Homeland Security have colored Mr. Chen is that he seems to be an ordinary Christian in China who goes to church every Sunday. The record is clear that Mr. Chen got into trouble because he was proselytizing about the gospel outside of the officially sanctioned churches in China. The Board of Immigration Appeals correctly found that Mr. Chen had suffered past prosecution on the basis of his lengthy detention, his beatings in prison, his lengthy questioning about his activities in terms of proselytizing the store. However, I think the BIA got it wrong that the DHS approved and changed circumstances by proponents of the evidence. The BIA's decision is based on five findings. Number one, the police questioned Mr. Chen primarily about his employer and then lost interest. The record states that they questioned him about his spreading cult in the store. He was spreading Christianity in the store. They asked Mr. Chen about his employer's religious proselytizing store and they also had him, after the beatings, report every month even up to the point of his departure from China. The second thing that they looked at, that they held against him, was that he stayed in China one year after the incident. Mr. Chen stated that he stayed in China to help the family with the farm after the harvest and it also took some time for him to arrange to get a passport to leave China with a smuggler. But to the extent that the BIA noted, or the immigration judge noted, that he himself went to go get the passport and that it's his name, the passport, he stated that it was the smuggler that did all the teamwork, not Mr. Chen. The third thing that they stated was that Mr. Chen's monthly police visits decreased in duration. However, this doesn't change the fact that he still had to report. He still had to continue to appear in front of the authorities that are beating him so severely. And if the police were no longer interested in his activities, they very easily could have just asked him to stop reporting. Well, he was, Mr. Aquino, found credible with regard to his testimony on the past persecution issues. That's correct. What do you think, what do you say will constitute persecution if he goes back to China? Actually, I was about to get to that. I think that if he goes back to China, given that previously he had been proselytizing outside of the government-sanctioned churches, that if he goes back to China and continues proselytizing, he will again run into trouble. Where on the record did he indicate that he was proselytizing? I'm saying he's proselytizing. It's basically that instead of just merely practicing the religions only in the churches, and in the official registered churches that are okay with the government of China, he was spreading the gospel inside of his employer's motorcycle shop. I couldn't find that. Is that on the record as well? Yes, Your Honor. As I read the record, he did discuss religion, or he was accused of it, in the motorcycle shop. Yes. I think the whole reason that he got into trouble was because he was talking about Christianity in the motorcycle shop. Well, talking about Christianity may be different from proselytizing. Isn't that true? I don't think so. I think that proselytizing, the way that I would describe proselytizing, Your Honor, is that he's basically talking about his religion to other people. He talks about the records at number 77, the Joint Appointments of 77 and 76. The gentleman named Mr. Little Wang, Wang Xiaoming, was a call employee in the store, and he said that Mr. Chan and his employer had been discussing this to other people, and he didn't like it, so he turned in and gave that information to the police. The police came and then arrested both Mr. Chan and his employer. Is that the only evidence of proselytizing? I think that that would be the... Discussing religion in front of other people, including the person who complained. Yes, Your Honor. I think that that's the big one. His claim that he would be persecuted is basically because he's a Christian, not because he's going to go back to China and he would like to spread the gospel, and he would not be permitted to do so. I mean, isn't that the testimony before the IJ and what the BIA considered? I think that, unfortunately, the magic bullet statement that, yes, I'm going to go back to China and continue proselytizing, isn't there in the record. However, I think that in the context of his previous actions, and based on what he said, he's been going to a Christian church for most of his lifetime, and he became more of a devout Christian after the age of 19 when he was able to make his own decisions as an adult. I think that if you look at the context of how he's lived his life previously, I think that it's most likely, unfortunately, once again, we don't have a statement that he's going to go back and do this, but I think that it's clear that he will probably continue to do what he did previously. Why did the BIA err when it said that there's been a fundamental change in country circumstances, therefore you do not reasonably fear persecution? I don't think that there's been a fundamental change in circumstances. I think that the government is still the same. The country reports, actually, that the government relies upon, stated that government-registered churches are allowed. That's government-registered churches. The country report also shows that the country has respect for freedom of religion as before, especially for unregistered religious groups. Western religious groups are allowed to work in China, except that they're not allowed to proselytize openly. I think that goes, again, to the fact that Mr. Cheng is not part of a registered church. But the BIA didn't reference any change in country conditions, did it, or change in the structure of government or regime? No, Your Honor, the government is still the same. What do you take fundamental change in circumstances to mean? I didn't see anything that there was any major change in China. But they obviously meant something. I'm not sure what the BIA meant, Your Honor. I mean, it's our position that... Well, could it be that he was reporting less, and maybe the fundamental change relates to the individual rather than to the country? I think that even if he were reporting less, and even if he were... I think the fact still remains that he still had to go back and report every month, and he had to appear in front of the people that had beat him up so severely in the first place. And I think that, to a certain extent, having to appear in front of the very people that once beat you very severely, I think that that has some bearing. I think that in some ways continues the amount of persecution. It's sort of... If he keeps having to come back to face the very same authorities that beat him up before, I think that if they had changed so much, and they no longer had any interest in him whatsoever, they could have stopped his obligation to report. The other thing that the BIA... Before you shift points, did you say that he was not a member of a registered church? I thought he did belong to one, and the minister told him, don't come back, because you'll make trouble for us. Yes, he was told by... Well, he was not... But the BIA and the government stated that he was not forbidden to go back to his church to attend, and that he stated that he went in secret once, and there was a pastor that told him not to come to church, because I think that stated in the record that he wanted to protect his congregation. He didn't want this gentleman who got in trouble, the police, if he started coming back to church, they probably would have tainted the congregation. I think the pastor wanted to protect the congregation. That would not prevent him if he were to return to go to a different church with a different pastor in a different part of China. Isn't that true? That is true, Your Honor. China is a very big country. I think that if he were to go back to China, he couldn't find another church. Did he indicate in any way that he had a well-founded fear, because he was going to go back to China and proselytize, and he would be punished or persecuted for proselytizing? Once again, I don't think a statement like that is in the record. Did he say, if I go back, the police are going to be really angry at me because I ran out on their reporting schedule? He did make a statement that, yes, if he did go back to China, that they would be angry that he had failed to report to them, that they would come after him for that. Of course, he is entitled to, based on the EIE's decision, he's entitled to a presumption. That's correct, Your Honor. The question is whether the government has rebutted the presumption. Right, based on a rebuttance of the EIE. Why did or did they not rebut the presumption? I think that in order for them to rebut the presumption, they would have to rely on the notion that Mr. Chen is simply like the numbers of millions of people in China who go to church every Sunday and they go to officially recognized churches. It's my position, and if that's the case, then I think that we'd be right, and the Department of Homeland Security would be right. Unfortunately, Mr. Chen will have to go home now. But I think that what separates this case from what the Department of Homeland Security puts forward is that Mr. Chen, what got Mr. Chen into trouble is that he was proselytizing the store outside of the officially sanctioned churches, and on the basis of that, that's what drew the attention of the authorities to him, and I think that he's going to continue doing that again in the future. It was the police themselves that warned him during their questioning not to believe in God anymore. That's page 82 in the record. And also, the government noted that his grandmother that no harm had come to his grandmother. However, his grandmother, who is also a Christian, did not preach outside of the church. That makes him different from many of the millions of other Chinese in China who are Christians who have no trouble with the authorities. I think that what separates Mr. Chen from everyone else is that he was talking about the gospel to customers in the store. Somebody didn't like it. They tipped off the authorities, and as a result, they came and arrested him and his employer. I think at this point, I'm just going to ask the court, based on the above, to grant the position, and then I'll proceed the rest of my time to the court. Good. Thank you, Mr. Akim. Great day. Please, the court. I'm Karen Grigsby for the government. Government asks that you affirm the decision of the BIA because it's supported by substantial evidence and the record as a whole. Although the BIA did find that the petitioner had suffered past persecution, it found that the presumption of future persecution was overcome here by the evidence, and specifically that evidence was first and foremost that the police questioned Chen primarily about his employer, and were not particularly interested in Chen himself after his release. The record shows that Chen was asked, What did they ask you? What did the police ask you during the interrogation? And he responded, They questioned me about the things I say about the cult, quote-unquote, to other people. Then they questioned me about the things concerning the owner of the store. Since I did not tell them anything more concerning the owner of the store, since they couldn't get anything out of me, they started beating me with their fists. So he directly tied, Chen himself directly tied, the physical assault that he suffered to his inability, unwillingness or just simple inability, to say anything further about the owner of the store, who was clearly the focus of the police interest here. But he was persecuted. Yes, he was. And that included the detention, which was about 30 days or so. Yes. And beating. Yes, but I think the point of the BIA talking about the focus on the employer is that since Chen could not give any further information about the employer and since the interest of the police was in the employer, it goes to the question of whether Chen is going to suffer persecution when he returns. And the inference is that no, he is not, because, again, the focus of the police is not Chen and not Chen's activities, but Chen's employer. And specifically there were references and evidence in the record, and this is from Chen himself, that Chen's employer had some kind of tie to Taiwan and that the police were interested in what that tie was, that Chen's employer had, I think, received something from Taiwan and the police were interested in that. Putting their focus aside for a moment, still to rebut the presumption, you have to show fundamental change in circumstances. Yes. You agree with that? Yes, I do. So what was the fundamental change in circumstances that would allow the board to conclude that he did reasonably fear persecution? The change in circumstances, although it's often spoken of in terms of a change in country conditions, when you look at the CFR, the actual statute, it's not confined to that. It can be a change, apparently, in one's personal circumstances. And the change here… It doesn't say that, does it? I mean, that's just the way it's worded broadly? It's worded broadly. It simply refers to a change of circumstances, but it doesn't specify… Whether the individual reasonably fears or whether there's been a change in regime or… Exactly, Your Honor. Exactly. So here the BIA looked at several things, and one was originally the police were talking to Chen about the employer, but their focus changes when they realize that Chen isn't going to get anything. The focus shifts. Isn't going to give them anything. Excuse me. The focus shifts from Chen to the employer, and Chen himself testified that… Asked, was your boss the main focus of the police? In other words, was the boss really the person who was being investigated? And he answered, oh, yes. And that's on page 92 of the record. And so that's one thing. Another thing that demonstrates the change in circumstances that occurred is that Chen was in China, remained in China, for more than a year after this incident and before he came to the United States. And during that time, there is no evidence that the police assaulted him again, that there were any further physical beatings. There's no evidence that the police ever came to his family's farm and conducted any search. Was he still reporting at this time? Yes, he was reporting, although the evidence also shows, again, a change in that, that the reporting, which originally lasted one to two hours, they asked him, I believe he said, the final time that he reported. It was down to about 20 minutes. Could you not reasonably fear persecution if you were returned to a circumstance where you were required by the police after being detained and being required to report for a year that you would be persecuted if returned? Persecuted, I guess, had he remained, I think what he could have anticipated is not, is simply that there would have been further reportings until that just stopped. He specifically testified that he feared that if he went back, since they will find out that I escaped and left China, upon my return, I would lose my freedom of belief and I believe that I would be detained for a long period of time like they did to my boss, because I did not continue to report. And also they warned me that I should not believe in God anymore. So that is a sanction for having left while under, you know, being told to report. It's not a sanction for future persecution, for proselytizing. There is nothing in the record, as Chen's counsel concedes, there is no statement in the record that he intended to proselytize when he returned. So what he feared suffering was the consequence of having left, not the consequence of having proselytized or of intending in the future to proselytize. How do we treat that, the consequences that he would undergo by reason of his leaving China? That doesn't factor into fear of future persecution because of its very nature? Or do we consider it? Your Honor, I do not believe that it does factor in because a requirement to report in and of itself I do not think would qualify as persecution. Under the case law, to my knowledge, the cases that have a finding of persecution have a finding of a physical encounter with the authorities. And I think that, and even in some instances, I think under the case law what occurred here might not have been construed as persecution, however awful it was. But he's going to be, assuming he has returned, he's probably going to be in big trouble if the people who insisted that he report on a monthly basis, even though the reporting became less onerous over a period of time. They're not going to be preempted. Well, there's nothing in the record that shows how many more times. The only thing in the record is the petitioner's statement that he would be in trouble because he, quote-unquote, escaped. There's nothing in the record, for example, as petitioner's counsel says, China is a big country. If he went back to China and went elsewhere, we don't know whether there would be some kind of tracking, whether there would be further measure. Possibly since the police had so little interest in him and the point that he left, there would be no effort made at this point. But simply there is nothing in the record that speaks to that. But of course there is reasonable belief. Is it reasonable to believe that if I go back, the police is not going to be very happy with me? He did testify. He has a statement. Since they will find out that I escaped and left China upon my return, I would lose my freedom of belief, and I believe that I would be detained for a long period of time like they did to my boss. Why is that reasonable? Your Honor, if that is reasonable, that yes, I walked out on a sentence, therefore there will be consequences or not a sentence because there wasn't a trial here. But I walked out, well, illegally for one thing. He really is in no different position from every alien who was in this country illegally. Regardless of how they got here, they used an illegal or, you know, what prompted them, whether they're fleeing a one-child policy or whatever, if they come here on an illegal passport, they left China illegally, presumably there's consequence to them when they are returned to China. Here the consequence that he would suffer is that he returned is not because he proselytized, but because he left China without permission when he was still on some kind of recording schedule with the authorities. Right, of course, that's true. With anybody who leaves China, they leave without authority. Exactly. But that alone does not mean that if you're returning, you will not suffer persecution. But again, here the person, when he returns, if he returns, he suffers consequences for leaving, but he doesn't suffer consequences for the proselytizing. The consequences for the proselytizing were demonstrated that he was physically assaulted by the police, that he suffered injury, which, however unfortunate, even he described in the record, is not serious, and that he then reported over time in what became diminished, shorter and shorter, because, again, the focus was on his boss, and when it became clear that he didn't have information about the boss, they were not really interested in him, as he conceded in the record. So there was a change of circumstances from what happened to him based on his sharing of the gospel in the workplace. Over time, it became diminished. Had he stayed there, as the record shows, there would have been no further... The record fails to show that there would have been any further encounters with the police on this. Therefore, Your Honor, we ask that you affirm the decision of the BIA. Good. Ms. Grigsby, thank you very much. Mr. Aquino. Your Honor, thank you for the opportunity for rebuttal. I just want to briefly state that it's... As a reminder, it's the government's burden of proof to show that there's a preponderance of the evidence that there have been change of circumstances, and I still don't think that they've met. Thank you, Your Honor. Good. We thank both counsel for a very helpful argument. We will take the case under advisement. Thank you, Your Honor.